**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
:
TAYLOR G.,                                          :
:
Plaintiff,                        :
:                   Civil No. 23-1029 (RBK)
v.                              :
:                   **OPINION**
COMMISSIONER OF SOCIAL                :
SECURITY,                                           :
:
Defendants.                  :
_____ :

**KUGLER**, United States District Judge:

      **THIS MATTER** comes before the Court upon Plaintiff Taylor G.'s Appeal (ECF No. 1)

from the final decision of the Commissioner of the Social Security Administration denying

Plaintiff's application for Social Security Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").[1] For the reasons set forth below, the Commissioner's

decision is **AFFIRMED**.

**I.**     **PROCEDURAL HISTORY**[2]

      In July 2020, Plaintiff filed applications seeking DIB and SSI, alleging an onset of

disability on March 8, 2020. (ECF No. 5, R. at 38, 219–20). These applications were denied in

January 14, 2021, (R. at 133–42), and denied again upon reconsideration on May 6, 2021. (R. at

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party
will be identified and referenced solely by first name and last initial in opinions issued in the
United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

[2] Because the record is voluminous, the Court sets forth only those facts that are necessary for
context and are relevant to the issues upon appeal. The Court cites to the administrative record,
(ECF No. 5), as "R." Background facts and medical history are set forth in a separate section
below.

147–54). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 155–56). On October 20, 2021, a hearing was held before ALJ Frederick Timm. (R. at 57–94). On December 3, 2021, ALJ Timm issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 38–51). Plaintiff appealed the ALJ's decision to the Appeals Council on January 24, 2022. (R. at 216–18). The Appeals Council denied Plaintiff's request for review on January 26, 2023, (R. at 1–3), rendering the ALJ's decision final.

On February 22, 2023, Plaintiff timely appealed the matter to this Court seeking review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed the administrative record on May 12, 2023. (ECF No. 5). Plaintiff filed a brief stating the basis for her appeal on June 9, 2023 ("Pl. Br."). (ECF No. 6). The Commissioner filed a responsive brief on July 5, 2023 ("Opp. Br."). (ECF No. 7). Plaintiff filed a reply brief on July 19, 2023 ("Reply Br."). (ECF No. 9).

## II.     STANDARD OF REVIEW

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (citation omitted). The Court's review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citation omitted). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do

basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id*. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Id*. at 201–02.

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful. As the Supreme Court has said regarding judicial review of a governmental agency decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"). That is, the plaintiff must "explain[ ] . . . how the . . . error to which he points could have made any difference." *Shinseki*, 556 U.S. at 413.

4

### III.    FACTUAL BACKGROUND[3]

Plaintiff Taylor G. was born on May 16, 1997, (R. at 62), making her 22 years old at the alleged onset date and 24 at the time of the ALJ's decision. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025, meaning that she had to establish disability on or before that date to be entitled to benefits. (R. at 38–39).

### A.    Plaintiff's Family, Educational, Work, and Medical History

Plaintiff testified that she lives with her mother and two siblings. (R. at 63). She graduated from high school, where she had an individualized education program ("IEP"). (R. at 64). She completed one semester of college but took a leave of absence during the second semester and never returned. (R. at 86). She attempted some online coursework but discontinued her studies without earning a degree. (R. at 86–87).

Plaintiff worked most recently as a home health aide for her grandfather, although she testified that she did not fully apply herself in that position and was subject to mental abuse by her grandfather that culminated in a "huge panic attack." (R. at 71–72). She previously worked as a housekeeper, (R. at 75–76), fast-food worker, (R. at 89), bus monitor, (*id.*), and stock clerk. (R. at 90).

Plaintiff testified that she was first hospitalized for psychiatric issues, including having suicidal thoughts, when she was roughly 10 years old. (R. at 65). She made multiple suicide attempts and has had several inpatient hospitalizations since then. (R. at 66). She reports suffering from depression and feeling hopeless, worthless, anxious, sad, and extreme fatigue. (R. at 66–67). She is easily overwhelmed in social situations and fears going outside. (R. at 75, 81). Plaintiff testified that she sleeps 20 hours per day and frequently has panic attacks that lead to

---

[3] The Court recites only the facts that are necessary to its determination on appeal.

nausea and pain in her chest and throat. (R. at 67–68). Negative emotions also trigger heavy menstrual bleeding and severe cramps. (R. at 68). Plaintiff takes three psychiatric medications and receives ongoing psychiatric treatment. (R. at 73–74, 77). Plaintiff reported weighing 306 pounds at the time of her hearing before the ALJ. (R. at 62). She experiences daily knee pain following a fall while boarding a train in 2017. (R. at 75–77).

**B.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 8, 2020. (R. at 40).

At step two, the ALJ found that Plaintiff has both severe and non-severe impairments. Plaintiff's severe impairments are obesity, osteoarthritis of the knees, bipolar affective disorder/premenstrual dysphoric disorder, anxiety disorder, and learning disorder. (R. at 41). The ALJ found Plaintiff's diagnosis of Arnold-Chiari malformation and various podiatric conditions are non-severe impairments. (*Id.*).

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 41–44).

At step four, the ALJ found that during the relevant period, Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Function by function, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can only stand and walk 2 hours total in an 8-hour workday. The claimant cannot operate foot controls. The claimant can never climb ladders, ropes and scaffolds, crawl or kneel. The claimant can engage in all other postural maneuvers occasionally. The claimant must avoid concentrated exposure to extreme cold and hazards. The claimant can engage in simple, routine tasks. The claimant can engage in goal-oriented rather than production-paced tasks. The claimant can have no significant interaction with the general public (even by telephone), and only occasional interaction with supervisors and co-workers. The claimant requires a stable workplace with few if any changes of setting, processes and tools.

(R. at 44–49). The ALJ further found that Plaintiff was unable to perform any past relevant work. (R. at 49).

At step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her RFC, age, education, and work experience. (R. at 49–50). Crediting the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as price marker, small product assembly, and assembler of electrical accessories. (R. at 50). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## IV.    DISCUSSION

Plaintiff raises four challenges on appeal. *See* (Pl. Br. 22–45).[4] Plaintiff contends that the ALJ committed harmful error by: (1) failing to consider medically determinable impairments in assessing Plaintiff's RFC; (2) improperly discounting Plaintiff's subjective complaints as to the impact of her mental impairments on her RFC; (3) failing to evaluate the persuasiveness of medical opinion evidence; and (4) making several mistakes in the step five analysis. The Court considers these arguments in turn and finds that none warrants remand.

### A.    The ALJ's Alleged Failure to Consider Medically Determinable Impairments at Step Four

Plaintiff argues that the ALJ committed a harmful error in failing to consider Plaintiff's irritable bowel syndrome ("IBS"), migraines, stomach issues, cramping, and bleeding in assessing her RFC. (Pl. Br. at 26–27). Plaintiff dedicates most of her argument to the first two conditions. She points out that the ALJ does not once mention her IBS in his decision even

---

[4] All citations to specific pages of the parties' briefs use the page numbers generated automatically by the ECF system.

though the record contains documentation of three different doctors either making or acknowledging such a diagnosis. (*Id.* (citing R. at 363, 379, 410)). As for her migraines, Plaintiff points out that the ALJ found her migraines to be non-severe at step two, (R. at 41), but did not explicitly mention them at step four in assessing her RFC. (Pl. Br. at 27 (citing Social Security Ruling ("SSR") 19-4p)). The ALJ's failure to analyze how these conditions would impact Plaintiff's ability to sustain employment, Plaintiff argues, constitutes harmful error.

Even assuming the ALJ made an error in failing to explicitly discuss these conditions in assessing Plaintiff's RFC, Plaintiff does not meet her burden of showing such an error was harmful. Plaintiff is correct that both severe and non-severe limitations must be reflected in the RFC. (Pl. Br. at 24); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); 20 C.F.R. § 416.945(a)(2) (stating substantially the same). However, Plaintiff must explain *how* the error to which she points would have made any difference. *See Shinseki*, 556 U.S. at 413. She fails to do so here. In her brief, Plaintiff states that her IBS and migraines "have more than a minimal effect on her ability to do basic work activities." (Pl. Br. at 26). She adds that "[t]he RFC is silent with respect to the impact of stress on these impairments [headaches, stomach issues, cramping, and bleeding] as well as how they would require time off tasks and breaks, for example." (*Id.* at 27). These statements are inadequate to show how the ALJ's consideration of these conditions would have changed the RFC assessment and, in turn, the outcome of the case.

The inadequacy of these statements is only underscored by the fact that the ALJ acknowledged Plaintiff's migraines at step two and stated he took them into account when

determining Plaintiff's RFC, (R. at 41); noted Plaintiff's reports of "abdominal distress" in determining her RFC, (R. at 47); recognized that Plaintiff's mental impairments cause "problems concentrating" but credited the medical opinion of consultant Thomas Plahovinsak that Plaintiff could "maintain attendance" at work, (*id.*); and discussed at length Plaintiff's mental health and her ability to manage her anxiety, depression, and stress with medication and therapy. (R. at 45–49). Especially considering these aspects of the ALJ's decision, Plaintiff fails to show that the lack of explicit mention of Plaintiff's IBS, migraines, stomach issues, cramping, or bleeding in the ALJ's RFC determination was harmful error.

### B.    The ALJ's Alleged Failure to Adequately Credit Plaintiff's Subjective Complaints at Step Four

Plaintiff next contends that the ALJ erred in not giving proper weight to "Plaintiff's statements regarding the nature and persistence of her symptoms," about which "there is overwhelming evidence" in the record. (Pl. Br. at 31). As a result, Plaintiff argues, "the ALJ's finding that the Plaintiff's statements were unsupported by the Record is simply contrary to the Record as a whole." (*Id.*). This argument is an apparent attack on the ALJ's RFC determination. Although Plaintiff does not explicitly say so, she cites to the ALJ's analysis at step four.

Credibility determinations are "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citation omitted). An ALJ need only "give the claimant's testimony 'serious consideration,' state her reasons for accepting or discounting it, and make 'specific findings.'" *Pergentile v. Berryhill*, Civ. No. 16-1381, 2018 WL 5730173, at *8 (D.N.J. Nov. 1, 2018) (quoting *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003)). When this occurs, "a reviewing court will defer to the ALJ's credibility determination." *Id.*; *see also Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188–89 (3d Cir. 2007) ("Where, as here,

the ALJ has articulated reasons supporting a credibility determination, that determination will be entitled to 'great deference.'") (citation omitted).

As an initial matter, the ALJ did not find, as Plaintiff suggests, that Plaintiff's subjective support of her symptoms were "unsupported" by the record. *See* (Pl. Br. at 31). Rather, the ALJ reached the more nuanced conclusion that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 45).

The ALJ's decision clearly indicates that the ALJ gave "serious consideration" to Plaintiff's subjective complaints about her symptoms. *See Pergentile v. Berryhill*, 2018 WL 5730173, at *8. He begins his RFC determination by summarizing Plaintiff's testimony, (R. at 45), then moves on to an in-depth review of her treatment and medical records, (R. at 45–47), the consultative examination report of a clinical neuropsychologist, (R. at 46–47), the medical opinions of two State Agency medical consultants, (R. at 48), and the opinion of Plaintiff's mother. (*Id.*).

The ALJ then states his reasons for crediting portions of Plaintiff's subjective complaints and discounting others. He writes, for example, that "[d]espite the claimant's allegations [that] her impairments cause debilitating functional limitations, to the contrary, she is able dress, bathe, and groom herself, as well as go bowling." (R. at 45). Later, after discussing Plaintiff's mental status examinations and other evidence, the ALJ writes that:

> [a]lthough treatment has not completely resolved the claimant's mental health difficulties, she has remained stable and has [not] required inpatient care since her brief hospitalization around the onset date, and her practitioners have not resorted to use of [electroconvulsive therapy] or ketamine. Moreover, the evidence

> illustrates she has had an improvement in her ability to manage her feelings and
> better communication with others.

(R. at 47). The ALJ also cites the medical opinions of the two State Agency medical consultants
as supporting Plaintiff's complaints that her "mental impairments cause difficulties in social
functioning, at times fleeting suicidal ideation, memory deficits, problems concentrating and
difficulties managing stressors." (R. at 48). The ALJ further observed, however, that "[d]espite
these difficulties, the claimant has consistently remained psychiatrically stable and has worked
on improving her ability to managing her anger and irritability, how she communicates with
others, and how she manages stressors/change." (*Id.*).

This record clearly shows that the ALJ gave serious consideration to Plaintiff's testimony
and explained his reasons for both accepting and discounting aspects of her complaints before
finding that "the claimant's statements concerning the intensity, persistence and limiting effects
of these symptoms are not entirely consistent with the medical evidence and other evidence in
the record." (R. at 45). The ALJ thus did enough for the Court to defer to the ALJ's credibility
determination on appeal. *See Pergentile v. Berryhill*, 2018 WL 5730173, at *8. The Court will
not remand on this basis.

### C.    The ALJ's Alleged Failure to Evaluate a Medical Opinion at Step Four

Plaintiff argues another basis for remand is the ALJ's failure to evaluate the
persuasiveness of a report by Dr. Lewis A. Lazarus (the "Lazarus Report"), a clinical
neuropsychologist who conducted a consultative examination of Plaintiff. (Pl. Br. at 33–36).
According to Plaintiff, the report is a "medical opinion" that the ALJ was required to evaluate,
and the ALJ's failure to do so is harmful error because it deprives the Court of the ability to
perform its review of the ALJ's decision. (Pl. Br. at 32–36). In response, the Commissioner
apparently concedes that the ALJ did not evaluate the persuasiveness of the report but argues

that, under the relevant regulations, he was not required to because the report does not meet the definition of a "medical opinion." (Opp. Br. at 19–20).

The Court assumes for the purposes of its review that the Lazarus Report is a medical opinion but finds that Plaintiff does not meet her burden of showing that the ALJ's failure to evaluate the report is harmful error. Under the relevant regulations, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain abilities related to work. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). When evaluating a medical opinion, the ALJ must articulate, using certain factors, "how persuasive [he] find[s] a medical source's medical opinions . . . to be." 20 C.F.R. §§ 404.1520c; 416.920c. Some courts have found an ALJ's failure to discuss the persuasiveness of a medical opinion to be harmful error because the lack of a "clear and satisfactory explication of the basis on which [an administrative decision] rests" undermines the court's ability "to perform its statutory function of judicial review." *See, e.g.*, *Williams v. Kijakazi*, Civ. No. 21-4413, 2024 WL 101853, at *5 (E.D. Pa. Jan. 8, 2024) (Lloret, Mag. J. opinion) (quoting *Cotter v. Harris*, 642 F.2d 700, 704–5 (3d Cir. 1981)).

Plaintiff, however, does not meet her burden of showing how the ALJ's failure to evaluate the Lazarus Report would have made any difference to the outcome of her case. *See Shinseki*, 556 U.S. at 413. Plaintiff states that the Lazarus Report "is supported by and consistent with the record as a whole." (Pl. Br. at 34). If anything, this observation cuts against Plaintiff's argument. Plaintiff points to nothing in the report that, had it been credited, could have resulted in a more restrictive RFC than what the ALJ ultimately determined. Indeed, to the Commissioner's point, little that Dr. Lazarus writes in his report has bearing on Plaintiff's ability to perform work. The closest the report comes to discussing Plaintiff's work-related limitations is

12

when it states that Plaintiff "can dress, bathe, and groom herself independently" and "is considered capable of effectively managing her own funds." (R. at 480–81). Elsewhere in his RFC determination, the ALJ evaluates and credits the medical opinions of two State Agency medical consultants and discusses at length Plaintiff's other medical evidence. (R. at 44–48). The ALJ's RFC determination is therefore supported by substantial evidence. *See Knepp*, 204 F.3d at 83. Plaintiff's argument that the contents of the Lazarus Report are consistent with these other evidentiary sources is simply not enough to meet her burden of showing that the ALJ's alleged error was harmful. Remand is not appropriate on this basis.

### D.    The ALJ's Alleged Failure to Support His Findings at Step Five

Lastly, Plaintiff contends that substantial evidence does not support the ALJ's findings at step five. She alleges three different errors, which the Court will consider in turn.

### i.    *Whether Plaintiff's Vocational Profile is Confusing Regarding Her Education Level*

Plaintiff argues that the ALJ's decision was "confusingly inconsistent" with respect to Plaintiff's level of education. (Pl. Br. at 40). Specifically, Plaintiff argues, the decision is inconsistent because it states that Plaintiff has a high school education yet finds that Plaintiff suffers from a learning disorder. (*Id*. (citing R. at 41, 49)). Further, when the ALJ questioned the vocational expert at Plaintiff's hearing, he asked the expert to "assume a functionally limited level of education." (*Id*. (citing R. at 91)). Plaintiff writes that "[t]he harm here is that the [vocational expert] was asked to provide occupations that do not require a high school education and she provided occupations that do." (*Id*.).

This argument lacks merit. While true that the ALJ found at step two that Plaintiff has a learning disorder, (R. at 41), the ALJ also found that Plaintiff "has at least a high school education," (R. at 49), a conclusion based on Plaintiff's testimony that she graduated from high

school, where she had an IEP, and attended some college. (R. at 64, 86). As the Commissioner

points out in his brief, "[t]here is no inconsistency in the ALJ's finding that Plaintiff had a

learning disorder, yet graduated from high school." (Opp. Br. at 20). Accordingly, it was

appropriate for the vocational expert to provide occupations that require a high school education.

Even if the ALJ's instruction to the vocational expert to "assume a functionally limited level of

education" could be construed as an error, it would be harmless. *See Shinseki*, 556 U.S. at 409.

Taking Plaintiff's representation that a "functionally limited level of education" is something less

than a high school education, any job that could be performed by someone with the former

education level could be performed by someone with the latter.

> ii.     *Whether the Occupations Identified by the Vocational Expert Involve*
>         *Exertional Requirements that the RFC Precludes*

Plaintiff next argues that the occupations provided by the vocational expert involve

exertional requirements that Plaintiff's RFC precludes. (Pl. Br. at 40–42). Specifically, Plaintiff

argues, the vocational expert identified three occupations with exertional demands that meet the

definition of "light work," (*id*. at 41), which is defined in the Social Security Administration's

Program Operations Manual System ("POMS") as work that "usually . . . requires walking or

standing for approximately 6 hours of the day." POMS § DI 25001.001. However, Plaintiff's

RFC specifies that Plaintiff "can only stand and walk 2 hours total in an 8-hour workday." (R. at

44). The implication is that the vocational expert should have considered only those occupations

that require sedentary work.

This argument also misses the mark. Plaintiff's description of the relevant legal standard

is incomplete. To be considered capable of "light work," an individual must have the ability to

do "substantially all" of the activities encompassed by light work. 20 C.F.R. §§ 404.1567(b),

416.967(b). Under the regulations, light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*Id*. Light work thus requires "a good amount of walking or standing" *or* "sitting most of the time" in combination with other tasks. *Id*. Sedentary work, in comparison:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

*Id*. §§ 404.1567(a), 416.967(a). While POMS guidelines warrant respect, the Third Circuit has made clear that "[POMS] regulations do not have the force of law." *Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996). Therefore, the POMS guidelines are not controlling, and Plaintiff is not required to have the RFC to stand for six hours a day to be considered capable of light work or, as discussed below, modified light work.

Claimants are often capable of performing tasks that meet some but not all the criteria of an exertional range of work. For example, they may be able to meet the lifting requirements but not the standing requirements of light work. In the situation where the claimant's exertional limitations are "somewhere 'in the middle'" of two categories, SSR 83-12 advises the ALJ to seek out the assistance of a vocational expert to help determine what jobs, if any, are available in the national economy despite the relevant limitations.[5] In turn, if the vocational expert testifies that a significant number of jobs exists, that testimony provides substantial evidence to support an ALJ's conclusion that a claimant is not disabled. *See Martin v. Barnhart*, 240 Fed. App'x 941,

---

[5] Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *see also Henderson v. Soc. Sec. Admin.*, 87 Fed. App'x 248, 251 (3d Cir. 2004).

946 (3d Cir. 2007) ("The [vocational expert]'s testimony provides substantial evidence to support the ALJ's conclusion that Martin is not disabled because there are a significant number of light exertional jobs in the economy which she can perform."); *see also Echevarria v. Acting Comm'r of Soc. Sec.*, Civ. No. 16-3859, 2017 WL 4330243, at *5 (D.N.J. Sept. 29, 2017) ("The vocational expert's opinion provided substantial evidence sufficient to support the ALJ's conclusion that Plaintiff was not disabled.").

Here, the ALJ properly found that Plaintiff's RFC did not fall squarely into any one exertional range of work and thus consulted a vocational expert, whose opinion provided substantial evidence to support his finding of no disability. At Plaintiff's hearing, the ALJ took account of Plaintiff's standing limitations when he asked the vocational expert whether work existed for a hypothetical individual with an RFC for "light exertion, generally, but only two hours total standing and walking of an eight-hour workday." (R. at 90). In her response, the vocational expert made clear that a hypothetical individual matching Plaintiff's description would be able to perform "modified light" work because "the individual is capable of lifting the 20 pounds but you did limit the standing." (R. at 91).[6] That is, Plaintiff's RFC put her "somewhere in the middle" of light and sedentary work. *See* SSR 83-12. The expert then opined that a significant number of jobs exist in the national economy for a hypothetical individual matching Plaintiff's profile. (R. at 91–92). The ALJ relied on the expert's opinion in concluding

---

[6] The Third Circuit has upheld ALJs' conclusions that claimants retained the capacity for modified light work when they were unable to stand or walk for more than two hours per day. *See, e.g., Elliott v. Comm'r of Soc. Sec.*, 295 Fed. App'x 507, 508 (3d Cir. 2008) ("The ALJ's observation that the full range of light work requires standing or walking for six hours per day is consistent with his conclusion that Elliott possessed the RFC to perform light work with modifications, *i.e.*, that he not be required to stand or walk for more than two hours per day, and that he have a sit/stand option for the remainder of the eight-hour workday."); *Young v. Astrue*, 519 Fed. App'x 769, 770–71 (3d Cir. 2013).

that Plaintiff is not disabled. Accordingly, his decision was supported by substantial evidence. *See Martin*, 240 Fed. App'x at 946. Remand is not appropriate on this basis.

### iii.   Whether the Occupations Identified by the Vocational Expert Require a Reasoning Level that the RFC Precludes

Finally, Plaintiff argues that because her RFC limited her to "simple, routine tasks," the ALJ committed error when he denied benefits based on the availability of jobs that require a more advanced reasoning level. (Pl. Br. at 42–44). Plaintiff refers to the General Educational Development ("GED") reasoning levels listed in the Dictionary of Occupational Titles ("DOT"). "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (citation omitted). GED measures "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is broken into three categories: reasoning development, mathematical development, and language development. *Id*. Reasoning levels in the DOT range from one to six. *Id*. Relevant to this case, jobs with a reasoning level of two require that an employee "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Appendix C*, DOT. Plaintiff argues that because her RFC limited her to "simple, routine tasks," she can only perform work involving reasoning level one. (Pl. Br. at 43). The jobs identified by the vocational expert, however, require reasoning level two capabilities. (*Id*.).

As the Commissioner points out, this argument has been foreclosed by the Third Circuit, which has held that "[w]orking at reasoning level 2 would not contradict the mandate that [the claimant's] work be simple, routine and repetitive." *Money v. Barnhart*, 91 Fed. App'x 210, 215 (3d Cir. 2004). Other courts in the Third Circuit have held the same. *See, e.g.*, *Jones v. Astrue*,

570 F. Supp. 2d 708, 716 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 Fed. App'x 166 (3d Cir. 2008) (citing cases from other circuits); *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 496 (D.N.J. 2022); *Paula F. v. Kijakazi*, Civ. No. 21-13196, 2023 WL 3815423, at *17 (D.N.J. June 5, 2023) (King, Mag. J. opinion). Therefore, there was no inconsistency between the limitations included in Plaintiff's RFC and the level two reasoning ability required of the jobs identified by the vocational expert. The expert's testimony provided substantial evidence for the ALJ's finding that Plaintiff could perform certain jobs. Remand is not appropriate on this basis.

## V.     CONCLUSION

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff's applications for DIB and SSI benefits is **AFFIRMED**. An Order follows.


Dated:   March 28, 2024                                    /s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge